IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GENE KATZ, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 1:16-CV-9314 |
| v. | ) |
| | ) **JURY DEMAND** |
| CALAMOS ASSET MANAGEMENT, INC., | ) |
| CALAMOS INVESTMENTS, LLC., f/k/a | ) |
| CALAMOS HOLDINGS, LLC, CALAMOS | ) |
| FINANCIAL SERVICES, LLC, CALAMOS | ) |
| ADVISORS, LLC, JOHN P. CALAMOS, | ) |
| SR., and JOHN S. KOUDOUNIS, | ) |
| | ) |
| Defendant. | ) |

## **COMPLAINT**

Plaintiff, GENE KATZ, by and through his attorneys, Stephan Zouras, LLP, complains of Defendants, CALAMOS ASSET MANAGEMENT, INC., CALAMOS INVESTMENTS, LLC, F/K/A CALAMOS HOLDINGS, LLC, JOHN P. CALAMOS, SR., and JOHN S. KOUDOUNIS, (collectively "Defendants" or "Calamos") for violation of the Dodd-Frank Act, 15 U.S.C. § 78u-6(h)(1)(A), the Illinois Whistleblower Act, 740 ILCS 174/1, *et seq.*, and for common law retaliatory discharge. In support of these claims, Plaintiff states as follows:

### **NATURE OF THE CASE**

1. Gene Katz (hereinafter "Plaintiff" or "Katz") seeks redress for Defendants' violation of the Dodd-Frank Act 15 U.S.C. § 78u-6(h)(1)(A), the Illinois Whistleblower Act 740 ILCS 174/1, *et seq.*, and for common law retaliatory discharge.

2. Plaintiff is a former Vice President and Director of Corporate Development at Calamos Investments, LLC.

1

3. On July 14, 2016, Plaintiff sent an email to individual Defendants outlining various issues within the company that he reasonably believed to be imminent risks to the company and its future.

4. Within one hour of sending that email, Defendants' head of security and John P. Calamos, Sr.'s son-in-law, Ken Witkowski, and Calamos' Director of Human Resources Bethanne Panos ("Panos") approached Plaintiff at his desk, informed him he had been terminated and escorted him off company premises.

5. Later that evening, Panos emailed Plaintiff informing him that he was not terminated but placed on administrative leave pending an investigation into his claims against the company.

6. Throughout Plaintiff's so-called administrative leave period, Plaintiff was not permitted to return to work.

7. During Plaintiff's so-called administrative leave period, Defendants continued to operate as though Plaintiff had been terminated.

8. On August 11, 2016, Calamos officially fired Plaintiff.

**PARTIES**

9. Plaintiff is a citizen of the State of Illinois and presently resides in Buffalo Grove, Illinois. At all times material, Plaintiff was an "employee" as defined by 740 ILCS 174/5.

10. Defendant Calamos Asset Management, Inc. ("CAM"), is a Delaware corporation registered to transact business in the State of Illinois. Its headquarters are at 2020 Calamos Court, Naperville, Illinois 60563. CAM is an "employer" as defined by 740 ILCS 174/5.

11. Defendant Calamos Investments, LLC ("CI"), is a manager-managed Delaware limited liability company registered to transact business in the State of Illinois. Its headquarters

are at 2020 Calamos Court, Naperville, Illinois 60563. CI is an "employer" as defined by 740 ILCS 174/5.

12.     Defendant Calamos Financial Services, LLC ("CFS"), is a manager-managed Delaware limited liability company registered to transact business in the State of Illinois. Its headquarters are at 2020 Calamos Court, Naperville, Illinois 60563. CFS is an "employer" as defined by 740 ILCS 174/5.

13.     Defendant Calamos Advisors, LLC ("CA"), is a manager-managed Delaware limited liability company registered to transact business in the State of Illinois. Its headquarters are at 2020 Calamos Court, Naperville, Illinois 60563. CA is an "employer" as defined by 740 ILCS 174/5.

14.     Defendant John P. Calamos, Sr. ("Calamos, Sr.") is the founder, Chairman, and Global Co-Chief Investments Officer ("CIO") of CAM and CI. Calamos, Sr., also served as the Chief Executive Officer ("CEO") of CI until April 4, 2016. In these capacities, Calamos Sr., was involved in the day to day business operations of CAM and CI and had the authority to hire and fire employees, to direct and supervise the work of employees, to sign on corporate checking accounts, and to make decisions regarding employment issues. At all relevant times, Calamos Sr., acted and had responsibility to act on behalf and in the interests of CAM and CI in devising, directing, implementing, and supervising employment practices, including the decision to fire Plaintiff. Calamos, Sr., is an "employer" as defined by 740 ILCS 174/5.

15.     Defendant John S. Koudounis ("Koudounis") is the CEO of CI. In this capacity, Koudounis was involved in the day to day business operations of CI and had the authority to hire and fire employees, to direct and supervise the work of employees, to sign on corporate checking accounts, and to make decisions regarding employment issues. At all relevant times, Koudounis

3

acted and had responsibility to act on behalf of and in the interests of CI in devising, directing, implementing, and supervising employment practices, including the decision to fire Plaintiff. Koudounis is an "employer" as defined by 740 ILCS 174/5.

## FACTS

16. Plaintiff began working for the Calamos companies on January 20, 2015, as the Vice President and Director of Corporate Development for the Sales Management Department.

17. In this role, Plaintiff reported directly to Calamos, Sr., and Robert F. Behan ("Behan"), the President and Head of Global Distribution at CAM and CI. Plaintiff's duties primarily consisted of mergers and acquisitions in the asset management field, as well as other corporate development activities that included corporate strategy and relationship building for the firm. Plaintiff had access to non-public information regarding the company's financial situation, as well as the inner workings of company politics and structure.

18. Plaintiff earned $175,000 per year in base salary during his time at Calamos. He also received a performance-based bonus of $225,000 in 2015, participated in the company's 401(k) match program, worth $5,002; participated in the company's profit sharing scheme, 5.24% of his eligible compensation, or $3,829; and received insurance benefits worth $12,442. Plaintiff's total rewards for 2015 were $421,273.

19. In February 2016, Plaintiff was listed as "exceeding expectations" on his performance review. In that review, Behan stated among other things:

> "It seems like we have been working together for much longer! Gene has had a terrific year on that was marked by success and progress. Success in building a process and leading our first deal that looks to be a success. Gene is 100% aligned for the greater good of Calamos and exhibits a positive can do attitude. He also has a tremendous mind and can assimilate facts very quickly. I believe I can assign Gene almost any project and get a result at or better than expectations. I also believe Gene learned to think long-term and work much better with our company teams. I look forward to a great 2016."

4

Additionally, as part of his performance review, Plaintiff was offered 5,848 restricted stock units worth $50,000 which were scheduled to vest as follows: 25% in 2018, 25% in 2019, and 50% in 2020.

20. On or about March 15, 2016, Plaintiff began noticing various issues that he reasonably believed were risks to CI and CFS. Specifically, Plaintiff was concerned about the hiring of Koudounis (and the improper corporate process involved in doing so), continued outflows, lack of profitability, poor managerial depth, continued managerial turnover, poor fund management performance, lack of managerial focus, conflicts of interest with Calamos shareholders, and expensive fixed-cost structures, amongst other things.

21. These risks caused Plaintiff to investigate issues related to earnings quality, outflows, conflicts of interest, related party transactions, cash treatment, debt covenants, ongoing litigation, disclosures related to several current and former members of the board, and potential fiduciary duty violations to current Calamos investors. As a result of his findings, Plaintiff became concerned that these risks could lead to a loss of credibility in the industry, which could create a run on the companies' assets under management ("AUM") and the companies themselves.

22. On July 14, 2016, Plaintiff sent an email to Calamos, Koudounis, Behan, and Laura Calamos-Nasir, the Chief Administrative Officer of CI, outlining his concerns, attached hereto as <u>Exhibit A</u>. At the end of his email, Plaintiff stated that he would "not standby to watch or be a part of the dishonesty outlined above." *Id*.

23. Within one hour of sending that email, Defendants' head of security and Calamos Sr.'s son-in-law, Ken Witkowski, and the Director of Human Resources, Bethanne Panos,

approached Plaintiff at his desk, informed him he had been terminated and escorted him off company premises.

24. On the evening of July 14, 2016, Plaintiff received an email from Panos stating that he had not been fired but rather placed on administrative leave.

25. On August 11, 2016, Calamos officially terminated Plaintiff.

26. On or about September 9, 2016, Plaintiff received a copy of his Form U-5 disclosure, per Article V, Section 3 of the Financial Industry Regulatory Authority ("FINRA") Corporate Organization Manual, which notified of Plaintiff's separation from the Calamos companies. The form stated that his reason for termination was "discharged," and the termination explanation stated as follows: "Multiple violations of the firm's code of conduct and corporate standards – not client related."

27. Prior to the July 14 email, Plaintiff had never received any warnings, disciplinary actions, write-ups, or any other form of a poor performance review. Specifically, Plaintiff never received any documentation of any of his alleged violations of the company's code of conduct and/or corporate standards.

28. After the July 14 email, Plaintiff did not receive any documentation of his alleged violations of the company's code of conduct and/or corporate standards.

## COUNT I
## VIOLATION OF THE DODD-FRANK ACT
## 15 U.S.C. § 78u-6(h)(1)(A)

29. Plaintiff incorporates each of the above paragraphs as if fully set forth herein.

30. On July 14, 2016, Plaintiff shared his concerns regarding the Calamos companies and their financial situations via email with Calamos, Sr., Koudounis, Behan, and Calamos-

Nasir. At the end of his email, Plaintiff stated that he would "not standby to watch or be a part of the dishonesty outlined above." *See* Exhibit A.

31. Plaintiff's July 14, 2016 email constituted a disclosure under the Dodd-Frank Act, 15 U.S.C. § 78u-6(h)(1)(A).

32. Defendants retaliated against Plaintiff by firing him one hour after sending the July 14 email.

33. Defendants retaliated against Plaintiff by fabricating the explanation for his termination on the Form U-5 disclosure.

34. Plaintiff's discharge from his employment with the Calamos companies is causally related to his email on July 14, 2016.

35. Defendants' retaliation against Plaintiff for his disclosure of reasonably perceived illegalities at Calamos violates the Dodd-Frank Act, 15 U.S.C. § 76u-6(h)(1)(A).

36. As a result of the retaliation, Plaintiff should be reinstated with the same seniority status that he would have had but for Defendants' violation pursuant to 15 U.S.C. § 78u-6(h)(1)(C)(i).

37. As a result of the retaliation, Plaintiff should be awarded twice back pay with interest pursuant to 15 U.S.C. § 78u-6(h)(1)(C)(ii).

38. As a result of the retaliation, Plaintiff should be awarded compensation for litigation costs, expert witness fees, and reasonable attorneys' fees, pursuant to 15 U.S.C. § 78u-6(h)(1)(C)(iii).

## COUNT II
## VIOLATION OF THE ILLINOIS WHISTLEBLOWER ACT
## 740 ILCS 174/15

39. Plaintiff incorporates each of the above paragraphs as if fully set forth herein.

40. On July 14, 2016, Plaintiff shared his concerns regarding the Calamos companies and their financial situations via email with Calamos, Sr., Koudounis, Behan, and Calamos-Nasir. At the end of his email, Plaintiff stated that he would "not standby to watch or be a part of the dishonesty outlined above." *See* Exhibit A.

41. Plaintiff's July 14, 2016 email constitutes a disclosure under the Illinois Whistleblower Act, 740 ILCS 174/15.

42. Defendants retaliated against Plaintiff by firing him one hour after sending the July 14 email.

43. Defendants retaliated against Plaintiff by fabricating the explanation for his termination on the Form U-5 disclosure.

44. Plaintiff's discharge from his employment with the Calamos companies is causally related to his email on July 14, 2016, in which he refused to "standby to watch or be a part of the dishonesty outlined" therein.

45. Defendants' retaliation against Plaintiff for his refusal to participate in activities he reasonably believed were illegal violates the Illinois Whistleblower Act, 740 ILCS 174/15.

46. As a result of the retaliation, Plaintiff should be reinstated with the same seniority status that he would have had but for Defendants' violation.

47. As a result of the retaliation, Plaintiff should be awarded back pay with interest.

48. As a result of the retaliatory discharge, Plaintiff should be awarded compensation for any damages sustained as a result of the violation, including litigation costs, expert witness fees, and reasonable attorneys' fees.

**COUNT III**
**VIOLATION OF THE ILLINOIS WHISTLEBLOWER ACT**
**740 ILCS 174/20**

49. Plaintiff incorporates each of the above paragraphs as if fully set forth herein.

50. On July 14, 2016, Plaintiff shared his concerns regarding the Calamos companies and their financial situations via email with Calamos, Sr., Koudounis, Behan, and Calamos-Nasir. At the end of his email, Plaintiff stated that he would "not standby to watch or be a part of the dishonesty outlined above." *See* Exhibit A.

51. Plaintiff exercised his rights under the Illinois Whistleblower Act, 740 ILCS 174/20, by refusing to participate in activities he believed to be illegal.

52. Defendants retaliated against Plaintiff by firing him one hour after sending the July 14 email.

53. Defendants retaliated against Plaintiff by fabricating the explanation for his termination on the Form U-5 disclosure.

54. Plaintiff's discharge from his employment with the Calamos companies is causally related to his email on July 14, 2016.

55. Defendants' retaliation against Plaintiff for his refusal to participate in activities he reasonably believed were illegal violates the Illinois Whistleblower Act, 740 ILCS 174/20.

56. As a result of the retaliation, Plaintiff should be reinstated with the same seniority status that he would have had but for Defendants' violation.

57. As a result of the retaliation, Plaintiff should be awarded back pay with interest.

58. As a result of the retaliatory discharge, Plaintiff should be awarded compensation for any damages sustained as a result of the violation, including litigation costs, expert witness fees, and reasonable attorneys' fees.

## COUNT IV
## RETALIATORY DISCHARGE
## COMMON LAW

59. Plaintiff incorporates each of the above paragraphs as if fully set forth herein.

60. On July 14, 2016, Plaintiff shared his concerns regarding the Calamos companies and their financial situations via email with Calamos, Sr., Koudounis, Behan, and Calamos-Nasir. At the end of his email, Plaintiff stated that he would "not standby to watch or be a part of the dishonesty outlined above." *See* Exhibit A.

61. Plaintiff exercised his rights by disclosing reasonably perceived illegalities at Calamos and by refusing to participate in activities he believed to be illegal.

62. Defendants retaliated against Plaintiff by firing him one hour after sending the July 14 email.

63. Defendants retaliated against Plaintiff by fabricating the explanation for his termination on the Form U-5 disclosure.

64. Plaintiff's discharge from his employment with the Calamos companies is causally related to his email on July 14, 2016.

65. At all relevant times, there existed a clear mandate of Illinois public policy prohibiting discharge from employment for refusing to participate in activities that an employee reasonably believes to be illegal.

66. As a result of the retaliatory discharge, Plaintiff should be awarded past lost wages and future loss of earnings, as well as loss of past and future fringe benefits.

67. As a result of the retaliatory discharge, Plaintiff should be awarded damages for past and future pain and suffering, damages for emotional trauma, and his incidental and consequential damages.

68. As a result of the retaliatory discharge, Plaintiff is entitled to an award of punitive damages.

10

WHEREFORE, in light of the foregoing, Plaintiff respectfully requests that this Honorable Court grant judgment on his behalf and award him all relief necessary to make the employee whole, including but not limited to statutory remedies pursuant to 15 U.S.C. § 78u-6(h)(1)(C) and 740 ILCS 174/30, past lost wages and fringe benefits, future loss of earnings and fringe benefits, punitive damages, and any other relief this Court deems equitable and just.

## DEMAND FOR A JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable in this matter.

Date: September 28, 2016

Respectfully Submitted,

*/s/ James B. Zouras*
James B. Zouras
**STEPHAN ZOURAS, LLP**
205 N. Michigan Avenue, Suite 2560
Chicago, Illinois 60601
312.233.1550
312.233.1560 *f*
lawyers@stephanzouras.com

**ATTORNEYS FOR PLAINTIFF**

11

## **CERTIFICATE OF SERVICE**

I, the attorney, hereby certify that on September 28, 2016, I electronically filed the attached with the Clerk of the Court using the ECF system which will send such filing to all attorneys of record.

*/s/ James B. Zouras*
