IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **GENE KATZ,**<br><br>**Plaintiff,**<br><br>v.<br><br>**CALAMOS ASSET MANAGEMENT, INC., CALAMOS INVESTMENTS, LLC., f/k/a CALAMOS HOLDINGS, LLC, f/k/a CALAMOS FINANCIAL SERVICES, LLC, f/k/a CALAMOS ADVISORS, LLC, JOHN P. CALAMOS, SR., and JOHN S. KOUDOUNIS,**<br><br>**Defendants.** | Case No. 1:16-CV-09314<br><br>Honorable Milton I. Shadur |

**DEFENDANTS' ANSWER AND DEFENSES
TO PLAINTIFF'S COMPLAINT**

Defendants, Calamos Asset Management, Inc., Calamos Investments, LLC, f/k/a Calamos Holdings, LLC, Calamos Financial Services, LLC, Calamos Advisors, LLC (collectively "Calamos"); John P Calamos, Sr.; and John S. Koudounis ("Defendants"), by and through their undersigned attorneys, answer Plaintiff's Complaint and Jury Demand ("Complaint") as follows:

NATURE OF THE CASE

1.  Gene Katz (hereinafter "Plaintiff" or "Katz") seeks redress for Defendants' violation of the Dodd-Frank Act 15 U.S.C. § 78u-6(h)(1)(A), the Illinois Whistleblower Act 740 ILCS 174/1, *et seq.*, and for common law retaliatory discharge.

**ANSWER:** Defendants admit that Plaintiff seeks redress under the Dodd-Frank Act, the Illinois Whistleblower Act and for common law retaliatory discharge, but deny that they violated any statute or state common law.

  2. **Plaintiff is a former Vice President and Director of Corporate Development at Calamos Investments, LLC.**

**ANSWER:** Defendants deny the allegations in Paragraph 2 of the Complaint.

  3. **On July 14, 2016, Plaintiff sent an email to individual Defendants outlining various issues within the company that he reasonably believed to be imminent risks to the company and its future.**

**ANSWER:** Defendants admit that on July 14, 2016, Plaintiff sent an email titled "Risks to Calamos" to a number of individuals, including individual defendants Calamos, Sr. and Koudounis. Defendants deny the remaining allegations in Paragraph 3 of the Complaint.

  4. **Within one hour of sending that email, Defendants' head of security and John P. Calamos, Sr.'s son-in-law, Ken Witkowski, and Calamos' Director of Human Resources Bethanne Panos ("Panos") approached Plaintiff at his desk, informed him he had been terminated and escorted him off company premises.**

**ANSWER:** Defendants admit that Defendants' head of security, Ken Witkowski, and Calamos' Director of Human Resources, Bethanne Panos, escorted Plaintiff off company premises. Defendants deny the remaining allegations in Paragraph 4 of the Complaint.

  5. **Later that evening, Panos emailed Plaintiff informing him that he was not terminated but placed on administrative leave pending an investigation into his claims against the company.**

**ANSWER:** Defendants admit the allegations in Paragraph 5 of the Complaint.

  6. **Throughout Plaintiff's so-called administrative leave period, Plaintiff was not permitted to return to work.**

**ANSWER:** Defendants admit that Plaintiff was not permitted to return to work during his administrative leave period. Defendants deny the remaining allegations in Paragraph 6 of the Complaint.

  7. **During Plaintiff's so-called administrative leave period, Defendants continued to operate as though Plaintiff had been terminated.**

**ANSWER:** Defendants deny the allegations in Paragraph 7 of the Complaint.

  8. **On August 11, 2016, Calamos officially fired Plaintiff.**

**ANSWER:** Defendants admit that Plaintiff's employment was terminated effective August 11, 2016. Defendants deny the remaining allegations in Paragraph 8 of the Complaint.

## PARTIES

9. Plaintiff is a citizen of the State of Illinois and presently resides in Buffalo Grove, Illinois. At all times material, Plaintiff was an "employee" as defined by 740 ILCS 174/5.

**ANSWER:** Upon information and belief, Defendants admit the allegations in the first sentence of Paragraph 9 of the Complaint. Defendants admit the remaining allegations in Paragraph 9 of the Complaint.

10. Defendant Calamos Asset Management, Inc. ("CAM"), [sic] is a Delaware corporation registered to transact business in the State of Illinois. Its headquarters are at 2020 Calamos Court, Naperville, Illinois 60563. CAM is an "employer" as defined by 740 ILCS 174/5.

**ANSWER:** Defendants admit the allegations in the first two sentences of Paragraph 10 of the Complaint. Defendants deny the remaining allegations in Paragraph 10 of the Complaint.

11. Defendant Calamos Investments, LLC ("CI"), is a manager-managed Delaware limited liability company registered to transact business in the State of Illinois. Its headquarters are at 2020 Calamos Court, Naperville, Illinois 60563. CI is an "employer" as defined by 740 ILCS 174/5.

**ANSWER:** Defendants admit the allegations in the first two sentences of Paragraph 11 of the Complaint. Defendants deny the remaining allegations in Paragraph 11 of the Complaint.

12. Defendant Calamos Financial Services, LLC ("CFS"), is a manager-managed Delaware limited liability company registered to transact business in the State of Illinois. Its headquarters are at 2020 Calamos Court, Naperville, Illinois 60563. CFS is an "employer" as defined by 740 ILCS 174/5.

**ANSWER:** Defendants admit the allegations in Paragraph 12 of the Complaint.

13. Defendant Calamos Advisors, LLC ("CA"), is a manager-managed Delaware limited liability company registered to transact business in the State of Illinois. Its headquarters are at 2020 Calamos Court, Naperville, Illinois 60563. CA is an "employer" as defined by 740 ILCS 174/5.

**ANSWER:** Defendants admit the allegations in Paragraph 13 of the Complaint.

14. **Defendant John P. Calamos, Sr. ("Calamos, Sr.") is the founder, Chairman, and Global Co-Chief Investments Officer ("CIO") of CAM and CI. Calamos, Sr., also served as the Chief Executive Officer ("CEO") of CI until April 4, 2016. In these capacities, Calamos Sr., was involved in the day to day business operations of CAM and CI and had the authority to hire and fire employees, to direct and supervise the work of employees, to sign on corporate checking accounts, and to make decisions regarding employment issues. At all relevant times, Calamos Sr., acted and had responsibility to act on behalf and in the interests of CAM and CI in devising, directing, implementing, and supervising employment practices, including the decision to fire Plaintiff. Calamos, Sr., is an "employer" as defined by 740 ILCS 174/5.**

**ANSWER:** Defendants admit the allegations in the first four sentences of Paragraph 14 of the Complaint. Defendants deny the remaining allegations in Paragraph 14 of the Complaint.

15. **Defendant John S. Koudounis ("Koudounis") is the CEO of CI. In this capacity, Koudounis was involved in the day to day business operations of CI and had the authority to hire and fire employees, to direct and supervise the work of employees, to sign on corporate checking accounts, and to make decisions regarding employment issues. At all relevant times, Koudounis acted and had responsibility to act on behalf of and in the interests of CI in devising, directing, implementing, and supervising employment practices, including the decision to fire Plaintiff. Koudounis is an "employer" as defined by 740 ILCS 174/5.**

**ANSWER:** Defendants admit the allegations in the first three sentences of Paragraph 15 of the Complaint. Defendants deny the remaining allegations in Paragraph 15 of the Complaint.

## FACTS

16. **Plaintiff began working for the Calamos companies on January 20, 2015, as the Vice President and Director of Corporate Development for the Sales Management Department.**

**ANSWER:** Defendants admit the allegations in Paragraph 16 of the Complaint.

17. **In this role, Plaintiff reported directly to Calamos, Sr., and Robert F. Behan ("Behan"), the President and Head of Global Distribution at CAM and CI. Plaintiff's duties primarily consisted of mergers and acquisitions in the asset management field, as well as other corporate development activities that included corporate strategy and relationship building for the firm. Plaintiff had access to non-public information regarding the company's financial situation, as well as the inner workings of company politics and structure.**

**ANSWER:** Defendants admit that as VP, Director of Corporate Development, Plaintiff reported directly to Robert F. Behan and was responsible for developing and executing a

corporate development business plan and pursuing opportunities as the point person for potential acquisitions. Defendants deny the remaining allegations in Paragraph 17 of the Complaint.

**18. Plaintiff earned $175,000 per year in base salary during his time at Calamos. He also received a performance-based bonus of $225,000 in 2015, participated in the company's 401(k) match program, worth $5,002; participated in the company's profit sharing scheme, 5.24% of his eligible compensation, or $3,829; and received insurance benefits worth $12,442. Plaintiff's total rewards for 2015 were $421,273.**

**ANSWER:** Defendants admit the allegations in Paragraph 18 of the Complaint.

**19. In February 2016, Plaintiff was listed as "exceeding expectations" on his performance review. In that review, Behan stated among other things:**

> "It seems like we have been working together for much longer! Gene has had a terrific year on that was marked by success and progress. Success in building a process and leading our first deal that looks to be a success. Gene is 100% aligned for the greater good of Calamos and exhibits a positive can do attitude. He also has a tremendous mind and can assimilate facts very quickly. I believe I can assign Gene almost any project and get a result at or better than expectations. I also believe Gene learned to think long-term and work much better with our company teams. I look forward to a great 2016."

**Additionally, as part of his performance review, Plaintiff was offered 5,848 restricted stock units worth $50,000 which were scheduled to vest as follows: 25% in 2018, 25% in 2019, and 50% in 2020.**

**ANSWER:** Defendants admit the allegations in Paragraph 19 of the Complaint.

**20. On or about March 15, 2016, Plaintiff began noticing various issues that he reasonably believed were risks to CI and CFS. Specifically, Plaintiff was concerned about the hiring of Koudounis (and the improper corporate process involved in doing so), continued outflows, lack of profitability, poor managerial depth, continued managerial turnover, poor fund management performance, lack of managerial focus, conflicts of interest with Calamos shareholders, and expensive fixed-cost structures, amongst other things.**

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations regarding Plaintiff's "concerns." Defendants deny the remaining allegations in Paragraph 20 of the Complaint.

**21.** These risks caused Plaintiff to investigate issues related to earnings quality, outflows, conflicts of interest, related party transactions, cash treatment, debt covenants, ongoing litigation, disclosures related to several current and former members of the board, and potential fiduciary duty violations to current Calamos investors. As a result of his findings, Plaintiff became concerned that these risks could lead to a loss of credibility in the industry, which could create a run on the companies' assets under management ("AUM") and the companies themselves.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 21 of the Complaint regarding Plaintiff's motivations. Defendants deny the remaining allegations in Paragraph 21 of the Complaint.

**22.** On July 14, 2016, Plaintiff sent an email to Calamos, Koudounis, Behan, and Laura Calamos-Nasir, the Chief Administrative Officer of CI, outlining his concerns, attached hereto as Exhibit A. At the end of his email, Plaintiff stated that he would "not standby to watch or be a part of the dishonesty outlined above." Id.

**ANSWER:** Defendants admit the allegations in Paragraph 22 of the Complaint.

**23.** Within one hour of sending that email, Defendants' head of security and Calamos Sr.'s son-in-law, Ken Witkowski, and the Director of Human Resources, Bethanne Panos, approached Plaintiff at his desk, informed him he had been terminated and escorted him off company premises.

**ANSWER:** Defendants admit that Defendants' head of security, Ken Witkowski, and Calamos' Director of Human Resources, Bethanne Panos, escorted Plaintiff off company premises. Defendants deny the remaining allegations in Paragraph 23 of the Complaint.

**24.** On the evening of July 14, 2016, Plaintiff received an email from Panos stating that he had not been fired but rather placed on administrative leave.

**ANSWER:** Defendants admit the allegations in Paragraph 24 of the Complaint.

**25. On August 11, 2016, Calamos officially terminated Plaintiff.**

**ANSWER:** Defendants admit that Plaintiff's employment was terminated effective August 11, 2016. Defendants deny the remaining allegations in Paragraph 25 of the Complaint.

**26.** On or about September 9, 2016, Plaintiff received a copy of his Form U-5 disclosure, per Article V, Section 3 of the Financial Industry Regulatory Authority ("FINRA") Corporate Organization Manual, which notified of Plaintiff's separation from the Calamos companies. The form stated that his reason for termination was "discharged,"

and the termination explanation stated as follows: "Multiple violations of the firm's code of conduct and corporate standards – not client related."

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations regarding when Plaintiff received a copy of his Form U-5 disclosure. Defendants admit the remaining allegations in Paragraph 26 of the Complaint.

27. Prior to the July 14 email, Plaintiff had never received any warnings, disciplinary actions, write-ups, or any other form of a poor performance review. Specifically, Plaintiff never received any documentation of any of his alleged violations of the company's code of conduct and/or corporate standards.

**ANSWER:** Defendants admit the allegations in Paragraph 27 of the Complaint.

28. After the July 14 email, Plaintiff did not receive any documentation of his alleged violations of the company's code of conduct and/or corporate standards.

**ANSWER:** Defendants deny the allegations in Paragraph 28 of the Complaint.

## COUNT I
## VIOLATION OF THE DODD-FRANK ACT
## 15 U.S.C. § 78u-6(h)(1)(A)

29. Plaintiff incorporates each of the above paragraphs as if fully set forth herein.

**ANSWER:** Defendants incorporate their Answers to Paragraphs 1 through 28 herein as their Answer to Paragraph 29 of the Complaint.

30. On July 14, 2016, Plaintiff shared his concerns regarding the Calamos companies and their financial situations via email with Calamos, Sr., Koudounis, Behan, and Calamos- Nasir. At the end of his email, Plaintiff stated that he would "not standby to watch or be a part of the dishonesty outlined above." See **Exhibit A**.

**ANSWER:** Defendants admit the allegations in Paragraph 30 of the Complaint.

31. Plaintiff's July 14, 2016 email constituted a disclosure under the Dodd-Frank Act, 15 U.S.C. § 78u-6(h)(1)(A).

**ANSWER:** Defendants deny the allegations in Paragraph 31 of the Complaint.

32. Defendants retaliated against Plaintiff by firing him one hour after sending the July 14 email.

**ANSWER:** Defendants deny the allegations in Paragraph 32 of the Complaint.

**33.    Defendants retaliated against Plaintiff by fabricating the explanation for his termination on the Form U-5 disclosure.**

ANSWER:    Defendants deny the allegations in Paragraph 33 of the Complaint.

**34.    Plaintiff's discharge from his employment with the Calamos companies is causally related to his email on July 14, 2016.**

ANSWER:    Defendants deny the allegations in Paragraph 34 of the Complaint.

**35.    Defendants' retaliation against Plaintiff for his disclosure of reasonably perceived illegalities at Calamos violates the Dodd-Frank Act, 15 U.S.C. § 76u-6(h)(1)(A).**

ANSWER:    Defendants deny the allegations in Paragraph 35 of the Complaint.

**36.    As a result of the retaliation, Plaintiff should be reinstated with the same seniority status that he would have had but for Defendants' violation pursuant to 15 U.S.C. § 78u-6(h)(1)(C)(i).**

ANSWER:    Defendants deny the allegations in Paragraph 36 of the Complaint.

**37.    As a result of the retaliation, Plaintiff should be awarded twice back pay with interest pursuant to 15 U.S.C. § 78u-6(h)(1)(C)(ii).**

ANSWER:    Defendants deny the allegations in Paragraph 37 of the Complaint.

**38.    As a result of the retaliation, Plaintiff should be awarded compensation for litigation costs, expert witness fees, and reasonable attorneys' fees, pursuant to 15 U.S.C. § 78u-6(h)(1)(C)(iii).**

ANSWER:    Defendants deny the allegations in Paragraph 38 of the Complaint.

### COUNT II
### VIOLATION OF THE ILLINOIS WHISTLEBLOWER ACT
### 740 ILCS 174/15

**39.    Plaintiff incorporates each of the above paragraphs as if fully set forth herein.**

ANSWER:    Defendants incorporate their Answers to Paragraphs 1 through 38 herein as their Answer to Paragraph 39 of the Complaint.

**40.    On July 14, 2016, Plaintiff shared his concerns regarding the Calamos companies and their financial situations via email with Calamos, Sr., Koudounis, Behan, and Calamos-Nasir. At the end of his email, Plaintiff stated that he would "not standby to watch or be a part of the dishonesty outlined above." See Exhibit A.**

**ANSWER:** Defendants admit the allegations in Paragraph 40 of the Complaint.

**41.** **Plaintiff's July 14, 2016 email constitutes a disclosure under the Illinois Whistleblower Act, 740 ILCS 174/15.**

**ANSWER:** Defendants deny the allegations in Paragraph 41 of the Complaint.

**42.** **Defendants retaliated against Plaintiff by firing him one hour after sending the July 14 email.**

**ANSWER:** Defendants deny the allegations in Paragraph 42 of the Complaint.

**43.** **Defendants retaliated against Plaintiff by fabricating the explanation for his termination on the Form U-5 disclosure.**

**ANSWER:** Defendants deny the allegations in Paragraph 43 of the Complaint.

**44.** **Plaintiff's discharge from his employment with the Calamos companies is causally related to his email on July 14, 2016, in which he refused to "standby to watch or be a part of the dishonesty outlined" therein.**

**ANSWER:** Defendants deny the allegations in Paragraph 44 of the Complaint.

**45.** **Defendants' retaliation against Plaintiff for his refusal to participate in activities he reasonably believed were illegal violates the Illinois Whistleblower Act, 740 ILCS 174/15.**

**ANSWER:** Defendants deny the allegations in Paragraph 45 of the Complaint.

**46.** **As a result of the retaliation, Plaintiff should be reinstated with the same seniority status that he would have had but for Defendants' violation.**

**ANSWER:** Defendants deny the allegations in Paragraph 46 of the Complaint.

**47.** **As a result of the retaliation, Plaintiff should be awarded back pay with interest.**

**ANSWER:** Defendants deny the allegations in Paragraph 47 of the Complaint.

**48.** **As a result of the retaliatory discharge, Plaintiff should be awarded compensation for any damages sustained as a result of the violation, including litigation costs, expert witness fees, and reasonable attorneys' fees.**

**ANSWER:** Defendants deny the allegations in Paragraph 48 of the Complaint.

## COUNT III
## VIOLATION OF THE ILLINOIS WHISTLEBLOWER ACT
## 740 ILCS 174/20

**49.** Plaintiff incorporates each of the above paragraphs as if fully set forth herein.

**ANSWER:** Defendants incorporate their Answers to Paragraphs 1 through 48 herein as their Answer to Paragraph 49 of the Complaint.

**50.** On July 14, 2016, Plaintiff shared his concerns regarding the Calamos companies and their financial situations via email with Calamos, Sr., Koudounis, Behan, and Calamos-Nasir. At the end of his email, Plaintiff stated that he would "not standby to watch or be a part of the dishonesty outlined above." See Exhibit A.

**ANSWER:** Defendants admit the allegations in Paragraph 50 of the Complaint.

**51.** Plaintiff exercised his rights under the Illinois Whistleblower Act, 740 ILCS 174/20, by refusing to participate in activities he believed to be illegal.

**ANSWER:** Defendants deny the allegations in Paragraph 51 of the Complaint.

**52.** Defendants retaliated against Plaintiff by firing him one hour after sending the July 14 email.

**ANSWER:** Defendants deny the allegations in Paragraph 52 of the Complaint.

**53.** Defendants retaliated against Plaintiff by fabricating the explanation for his termination on the Form U-5 disclosure.

**ANSWER:** Defendants deny the allegations in Paragraph 53 of the Complaint.

**54.** Plaintiff's discharge from his employment with the Calamos companies is causally related to his email on July 14, 2016.

**ANSWER:** Defendants deny the allegations in Paragraph 54 of the Complaint.

**55.** Defendants' retaliation against Plaintiff for his refusal to participate in activities he reasonably believed were illegal violates the Illinois Whistleblower Act, 740 ILCS 174/20.

**ANSWER:** Defendants deny the allegations in Paragraph 55 of the Complaint.

**56.** As a result of the retaliation, Plaintiff should be reinstated with the same seniority status that he would have had but for Defendants' violation.

**ANSWER:** Defendants deny the allegations in Paragraph 56 of the Complaint.

**57.** As a result of the retaliation, Plaintiff should be awarded back pay with interest.

**ANSWER:** Defendants deny the allegations in Paragraph 57 of the Complaint.

**58.** As a result of the retaliatory discharge, Plaintiff should be awarded compensation for any damages sustained as a result of the violation, including litigation costs, expert witness fees, and reasonable attorneys' fees.

**ANSWER:** Defendants deny the allegations in Paragraph 58 of the Complaint.

## COUNT IV
## RETALIATORY DISCHARGE
## COMMON LAW

**59.** Plaintiff incorporates each of the above paragraphs as if fully set forth herein.

**ANSWER:** Defendants incorporate their Answers to Paragraphs 1 through 58 herein as their Answer to Paragraph 59 of the Complaint.

**60.** On July 14, 2016, Plaintiff shared his concerns regarding the Calamos companies and their financial situations via email with Calamos, Sr., Koudounis, Behan, and Calamos-Nasir. At the end of his email, Plaintiff stated that he would "not standby to watch or be a part of the dishonesty outlined above." See Exhibit A.

**ANSWER:** Defendants admit the allegations in Paragraph 60 of the Complaint.

**61.** Plaintiff exercised his rights by disclosing reasonably perceived illegalities at Calamos and by refusing to participate in activities he believed to be illegal.

**ANSWER:** Defendants deny the allegations in Paragraph 61 of the Complaint.

**62.** Defendants retaliated against Plaintiff by firing him one hour after sending the July 14 email.

**ANSWER:** Defendants deny the allegations in Paragraph 62 of the Complaint.

**63.** Defendants retaliated against Plaintiff by fabricating the explanation for his termination on the Form U-5 disclosure.

**ANSWER:** Defendants deny the allegations in Paragraph 63 of the Complaint.

**64.** Plaintiff's discharge from his employment with the Calamos companies is causally related to his email on July 14, 2016.

**ANSWER:** Defendants deny the allegations in Paragraph 64 of the Complaint.

**65. At all relevant times, there existed a clear mandate of Illinois public policy prohibiting discharge from employment for refusing to participate in activities that an employee reasonably believes to be illegal.**

**ANSWER:** Defendants admit the allegations in Paragraph 65 of the Complaint.

**66. As a result of the retaliatory discharge, Plaintiff should be awarded past lost wages and future loss of earnings, as well as loss of past and future fringe benefits.**

**ANSWER:** Defendants deny the allegations in Paragraph 66 of the Complaint.

**67. As a result of the retaliatory discharge, Plaintiff should be awarded damages for past and future pain and suffering, damages for emotional trauma, and his incidental and consequential damages.**

**ANSWER:** Defendants deny the allegations in Paragraph 67 of the Complaint.

**68. As a result of the retaliatory discharge, Plaintiff is entitled to an award of punitive damages.**

**ANSWER:** Defendants deny the allegations in Paragraph 68 of the Complaint.

**WHEREFORE, in light of the foregoing, Plaintiff respectfully requests that this Honorable Court grand judgment on his behalf and award him all relief necessary to make the employee whole, including but not limited to statutory remedies pursuant to 15 U.S.C. § 78u-6(h)(1)(C) and 740 ILCS 174/30, past lost wages and fringe benefits, future loss of earnings and fringe benefits, punitive damages, and any other relief this Court deems equitable and just.**

**ANSWER:** Defendants deny that Plaintiff is entitled to any relief, including the remedies described and the relief requested in the "WHEREFORE," paragraph of the Complaint.

## DEMAND FOR A JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable in this matter.

**ANSWER:** Defendants admit that Plaintiff demands a trial by jury but deny that Plaintiff's claims give rise to any triable issues.

## **AFFIRMATIVE DEFENSES**

Defendants state the following affirmative defenses and reserve the right to plead additional defenses as may be discovered during the course of the litigation:

1. The Complaint, and each of its causes of action, is barred, in whole or part, by the after-acquired evidence doctrine. Specifically, Plaintiff is not entitled to any relief for the period after October 14, 2016, when Defendants discovered that Plaintiff falsified and misrepresented certain facts concerning his prior employment history in applying for employment, a matter for which Plaintiff would have been discharged or denied employment.

2. Plaintiff's claims are barred to the extent that he has failed to mitigate, or failed to attempt to mitigate, his damages.

3. Plaintiff is not entitled to an award of punitive damages because the alleged violations by Defendants were not taken with reckless disregard of the rights of Plaintiff.

4. Plaintiff cannot recover punitive damages because, at all relevant times Defendants made a good-faith effort to comply with all applicable anti-retaliation statutes and Company policies prohibiting retaliation.

**WHEREFORE, Defendants pray for judgment as follows:**

1. That Plaintiff take nothing by reason of this Complaint, that the Complaint be dismissed in its entirety with prejudice, and that judgment be entered for the Defendants;

2. That Defendants be awarded their reasonable costs and attorneys' fees; and

3. That Defendants be awarded such other and further relief that the Court deems just and proper.

Dated: November 18, 2016

Respectfully submitted,

*/s/ Allison N. Powers*
Sari Alamuddin
Thomas F. Hurka
Allison Nugent Powers
MORGAN, LEWIS & BOCKIUS, LLP
77 W. Wacker, 5th Floor
Chicago, IL 60601
P: 312.324.1000
F: 312.324.1001
sari.alamuddin@morganlewis.com
thomas.hurka@morganlewis.com
allison.powers@morganlewis.com

*Attorneys for Defendants*

DB1/ 89649736.5

14

## **CERTIFICATE OF SERVICE**

I, the attorney, hereby certify that on November 18, 2016, I electronically filed the foregoing *Answer and Affirmative and Other Defenses to Plaintiff's Complaint* with the Clerk of the Court using the ECF system which will send such filing to all attorneys of record.

> */s/ Allison N. Powers*
> Allison N. Powers